[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 11, 2012
JOHN LEY
CLERK

No. 10-15119
Non-Argument Calendar

_____

D. C. Docket No. 2:07-cv-00533-SLB

ANNETTE CLARK,

Plaintiff - Appellant,

versus

SHAPIRO AND PICKETT, LLP,
EDITH PICKETT, and
WELLS FARGO BANK, N.A.
f.k.a. Wells Fargo Home Mortgage, Inc.,
f.k.a. Norwest Mortgage Inc.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 11, 2012)

Before BARKETT, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

In July 1995, Annette Clark purchased a home by obtaining a loan from Presidential Mortgage Corporation, evidenced by a note. To secure the loan, Clark granted Presidential a mortgage against the property pursuant to a FHA Mortgage dated July 11, 1995. On May 9, 1996, the mortgage was assigned to Wells Fargo, f/k/a Norwest Mortgage, Inc.

Pursuant to the terms of the note, Clark was obligated to make payments to Wells Fargo on the first day of each month beginning in September 1995 and continuing until August 2025.[1] According to Wells Fargo, Clark made all of her monthly payments, at least generally on time, from July 1995 until she missed a payment in November 1997. Clark also failed to make payments in January 1998, December 1998, September 1999, November 1999, December 1999, and November 2002. However, Wells Fargo was precluded from pursuing foreclosure because between January 14, 1998, and October 18, 2006, Clark was under

---

[1] If Wells Fargo did not receive her monthly payment by the fifteenth of that month, the note permitted Wells Fargo to charge a late fee. Under the terms of the mortgage, Clark's monthly payment consisted of the month's principal, interest, and any applicable late charges; as well as one-twelfth of the annual assessed taxes and insurance on the mortgaged property. The mortgage further provides that the borrower defaults on the loan by "failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment." In the event of default, Wells Fargo may "require immediate payment in full of all sums secured by this Security Instrument" and "invoke the power of sale" of the mortgaged property, where permitted by the HUD Secretary.

bankruptcy protection.[2]

As soon as the third bankruptcy case was dismissed without discharge in October 2006, Wells Fargo took steps to exercise its rights under the note and mortgage. Wells Fargo demanded full payment of all amounts due from Clark and placed her mortgage in foreclosure status. In November 2006, Clark sent a payment to Wells Fargo, but the amount was insufficient to bring her account current. Wells Fargo returned the check to Clark with a letter informing her that her account was in "foreclosure status" and that she should contact Wells Fargo's attorney, Shapiro & Pickett, LLP ("S&P"), with questions.[3] Clark did not attempt to make any further payments to Wells Fargo after her November payment was returned. Wells Fargo hired S&P to conduct a foreclosure sale pursuant to the note and mortgage.[4] On February 13, 2007, Wells Fargo foreclosed on Clark's

---

[2]    Three different Chapter 13 bankruptcy cases were filed in Clark's name during this period. Each case was dismissed for failure to make bankruptcy plan payments. She contends that she filed the first case, but her bankruptcy attorney filed the other two cases without her permission.

[3]    Ten days later, Wells Fargo sent a second letter to Clark informing her that she had options, expressing the bank's willingness to work with her, and suggesting that she contact their offices or a consumer credit counseling agency.

[4]    On December 13, 2006, S&P sent a "Verification Notice" to Clark. On December 19, 2006, S&P sent a foreclosure notice and explanatory letter instructing Clark that the foreclosure sale was set for January 11, 2007, and that an advertisement to that effect would run in The Alabama Messenger. In response, Clark's attorney sent a letter to Wells Fargo and S&P threatening a lawsuit and demanding a payment history specifying the months Clark failed to make her payments. On January 11, 2007, S&P postponed the foreclosure sale until January 29,

mortgage. According to Wells Fargo's records, Clark was eight payments behind under the terms of her mortgage, excluding fees and foreclosure charges.

Annette Clark filed suit against S&P, attorney Edith Pickett, and Wells Fargo in the United States District Court for the Northern District of Alabama, alleging: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), (2) conversion, (3) breach of contract, (4) fraud, (5) suppression, (6) conspiracy, (7) negligent and wanton hiring, training, supervision and retention, (8) wrongful foreclosure and (9) injunctive relief. The magistrate judge recommended summary judgment as to all claims in favor of all Defendants. The district court adopted the magistrate's report and recommendation and granted summary judgment. We affirm.

**Standard of Review**

We review a district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party. Moore ex rel. Moore v. Reese, 637 F.3d 1220, 1231 (11th Cir.

2007, and contacted Wells Fargo to verify the amount and accuracy of the debt. Between January 17, 2007, and February 6, 2007, S&P postponed the foreclosure sale twice and sent Clark's attorney three letters containing payment records. Additionally, S&P requested that Clark's attorney provide proof of payment for the missing payments. Clark's attorney never responded to this request.

2011). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.' " Int'l Stamp Art, Inc. v. U.S. Postal Serv., 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986)). "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' " Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (modification in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986)).

**Discussion**

Almost all of Clark's claims hinge on whether or not her mortgage was in default. Under the terms of the note and mortgage, the borrower defaults by failing to pay in full any monthly payment by the due date of the next monthly payment. Clark contends that she made all of her monthly mortgage payments

5

from September 1, 1995, until November 31, 2006. However, there is overwhelming evidence in the record that Clark's mortgage was in arrears.[5] Clark's payment history reveals that at the time her third bankruptcy case was filed, she was seven payments behind on her mortgage. During the course of the third bankruptcy, the bankruptcy trustee made three payments toward Clark's pre-petition arrearage. Thus, at the time the bankruptcy case was dismissed in October 2006, Clark was still at least four payments behind on her mortgage.[6]

According to the Bankruptcy Trustee's Interim Statement of December 13, 2006, at the time Clark's third bankruptcy case was dismissed, Clark still owed

---

[5] Clark's payment history is memorialized in multiple places in the record, including: the Bankruptcy Trustee's Disbursement Report; Wells Fargo's "Loan History" records for Clark's loan; Wells Fargo's "Bankruptcy Payment History" for Clark's loan; and the "Pencil Ledger" sent to Clark before the foreclosure sale.

[6] Clark argues that pursuant to HUD regulations, she had to be three full payments behind on her mortgage prior to foreclosure. However, Clark did not mention the HUD regulations in her amended complaint. Instead, in the breach of contract claim in her amended complaint, Clark asserts that "Pursuant to Section 6 of the mortgage contract/agreement, Wells Fargo has the right to foreclose on the loan only when the plaintiff failed to make the monthly mortgage payments." (Doc. 22 ¶ 59). She further claims that she made all of her monthly mortgage payments, was not in default, and Wells Fargo knew she was not in default. Not until her briefs in opposition to the Defendants' motions for summary judgment did she first advance an argument based on the HUD regulations. Throughout discovery, the Defendants were on notice only of her theory that they breached the contract by foreclosing when she had in fact made all of her payments. "Having proceeded through discovery without amending (or seeking to amend) [her] complaint to reflect [the] fundamental change [in the nature of her claim], [Clark] was not entitled to raise it in the midst of summary judgment." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006). However, assuming arguendo that Clark can properly make that argument before this Court, the evidence demonstrates that she was more than three payments in arrears.

6

$1,334.54 to Wells Fargo toward the pre-petition arrearage. This amount does not include any fees, escrow deficiencies, or expenses that accrued to Clark's account after the date she filed her third Chapter 13 case, nor does it include the one missed post-petition payment. Based on the Bankruptcy Trustee's Statement alone, Clark was in default at the time Wells Fargo placed Clark's mortgage in foreclosure status.[7] Furthermore, because Clark never attempted to make a payment after November 2006, she was at least two additional payments behind when Wells Fargo foreclosed on her mortgage in February 2007.

Although Clark insists she never missed a payment, she has failed to point to any evidence to support her position. Given the documentary evidence, no

---

[7] The district court properly found that the amount of Clark's debt to Wells Fargo as of the beginning of her third bankruptcy was conclusively established as a matter of federal bankruptcy law in the Bankruptcy Court for the Northern District of Alabama. This Court has held that "[c]onfirmation of a Chapter 13 plan by a bankruptcy court of competent jurisdiction, in accordance with the procedural requirements of notice and hearing of confirmation, is given the same [preclusive] effect as any district court's final judgment on the merits." In re Bateman, 331 F.3d 821, 830 (11th Cir. 2003) (quotation omitted). This res judicata effect prohibits the collateral attack of a confirmed plan, "bar[ring] litigation not only of every matter which was actually offered and received to sustain the demand, but also of every claim which might have been presented." Id. at 825 n.4, 830 (quotation omitted).

Wells Fargo timely filed a proof of claim in Clark's third Chapter 13 case in the amount of $4,756.15. The Bankruptcy Court confirmed Clark's Chapter 13 plan on February 10, 2003. Because neither Clark nor any other interested party objected to the proof of claim prior to plan confirmation, "it is 'deemed allowed' and is 'prima facie evidence of the validity and amount' of the mortgage arrearage." Id. at 827 (quoting 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f)). The Proof of Claim Wells Fargo filed in Clark's third Chapter 13 case and the Bankruptcy Court's Order confirming Clark's Chapter 13 payment plan establish as a matter of law that Clark was in default in the amount of $4,756.15 at the time she filed for bankruptcy protection in November 2002.

reasonable trier of fact could believe Clark's unsubstantiated testimony that she was not in arrears on her mortgage at the time of foreclosure. Accordingly, the district court properly granted summary judgment as to all claims based on the premise that Clark's mortgage was not in default. Thus, summary judgment was proper as to the claims for conversion; breach of contract; fraud; suppression; conspiracy; negligent and wanton hiring, training, supervision and retention; and wrongful foreclosure as well as her claims under the FDCPA, 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(10), 1692f(1), and 1692f(6).[8]

Clark's two remaining claims also fail. First, Clark alleges that the Defendants violated § 1692g(a) by failing to send a validation letter within five days after the initial communication with a consumer in connection with the collection of any debt. On December 6, 2006, pursuant to HUD regulation 24 C.F.R. § 203.675, S&P sent a letter addressed to the "Occupant" of the mortgaged property. On December 13, 2006, S&P sent a letter addressed to Clark. This

---

[8] Clark's initial brief does not mention her claims under 15 U.S.C. §§ 1692d(2) and 1692e(4). Issues that are not briefed on appeal are considered abandoned. Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001). Therefore, she has waived these claims on appeal. Additionally, Clark did not plead in her Amended Complaint a violation of 15 U.S.C. § 1692e(8). "This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quotations omitted). Thus, we do not resolve her § 1692e(8) claim.

second letter was labeled "VERIFICATION NOTICE" and contained all of the information required under § 1692g(a). Thus, the second letter was the validation letter required by the statute. However, Clark argues that because the letter was sent more than five days after the initial HUD letter, S&P violated the FDCPA.

The Defendants contend that the HUD letter was not an "initial communication" under the FDCPA. Section 1692g(a) requires a debt collector, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," to send written notice verifying the debt and instructing how the consumer can dispute the debt. In Vega v. McKay, 351 F.3d 1334 (11th Cir. 2003) (per curiam), we held that a foreclosure package consisting of a civil complaint, a summons to appear for a pretrial conference, and a FDCPA notice, was not an "initial communication" under § 1692g(a). Id. at 1335-37. Similarly, we have held that "a communication issued from [a] foreclosing party, or its counsel, regarding the foreclosure, does not violate 15 U.S.C. § 1692c(b), as such a communication is not subject to the FDCPA." Acosta v. Campbell, 309 Fed. App'x 315 (11th Cir. 2009) (per curiam). It follows that if the HUD letter was a communication issued from a foreclosing party or its counsel regarding the foreclosure, then it is not an "initial communication" that triggers the five-day requirement under § 1692g(a).

The HUD letter was sent by S&P, counsel to foreclosing party Wells Fargo. The letter informed the occupant that the mortgage was about to be foreclosed and that the property would be transferred first to Wells Fargo and then to the Secretary of HUD. The letter explained that HUD generally requires that there be no one living in properties for which it accepts ownership unless certain conditions are met. Finally, the letter included a copy of the conditions and explained how the occupant could contact HUD in order to request to remain on the property. Nothing in the letter suggested that it was an "initial communication with a consumer in connection with the collection of any debt." § 1692g(a). Instead, the letter was a communication from the counsel of a foreclosing party regarding a foreclosure. As such, the HUD letter was not an "initial communication" under § 1692g(a), and the Defendants did not violate the five-day requirement for sending the validation letter. Additionally, the contents of the validation letter sent on December 13, 2006, complied with the requirements set forth in § 1692g(a). Therefore, the district court properly granted summary judgment as to Clark's claim under § 1692g(a).

Finally, Clark claims that S&P violated § 1692g(b) by threatening to foreclose and taking steps to foreclose on Clark's mortgage prior to the expiration of thirty days from December 13, 2006—the date of the validation letter.

10

However, the "plain language of § 1692g(b) does not extinguish a creditor's right to secure a debt under state law, but instead merely prohibits deceptive collection techniques." Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1013 (11th Cir. 2004). Section 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b) (emphasis added).

Prior to the expiration of the thirty-day period, Clark's attorney disputed the debt via a letter dated January 10, 2007. Upon receipt of that letter, S&P immediately postponed the foreclosure sale from January 11, 2007, until January 29, 2007, and verified the debt with Wells Fargo. Nothing in the Defendants'

11

conduct violated § 1692g(b). Therefore, the district court properly granted summary judgment as to Clark's claim under § 1692g(b).

AFFIRMED.[9]

---

[9]     Clark's request for oral argument is DENIED.