[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 18, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13492

_____

D. C. Docket No. 02-02459-CV-TWT-1

INTERNATIONAL STAMP ART, INC.,

Plaintiff-Appellant,

versus

UNITED STATES POSTAL SERVICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 18, 2006)**

Before BIRCH and CARNES, Circuit Judges, and TRAGER[*], District Judge.

PER CURIAM:

---

[*]Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

Plaintiff-appellant, International Stamp Art, Incorporated ("ISA") appeals a grant of summary judgment in favor of defendant-appellee, the United States Postal Service ("Postal Service") with respect to the Postal Service's assertion of fair use in response to ISA's allegations of trademark infringement. The appeal requires us to determine the appropriate legal standard for good faith with respect to a fair-use defense in this context, an issue of first impression for us. Because we join four other circuits in holding that the legal standard is the same as for any other trademark infringement inquiry into good faith – whether the alleged infringer intended to benefit from the good will associated with the holder of the mark – and because there is no evidence in the record indicating that the Postal Service so intended, we AFFIRM.

## I. BACKGROUND

ISA, a for-profit corporation engaged in the production of note cards, greetings cards, posters, and prints, was founded in 1985. For most of these products, ISA has used a perforated border design that evokes the functional flat-edged perforation of an older postage stamp. See R3-56, Exhs. Q, S. In October 1994, ISA filed an application with the United States Patent and Trademark office seeking to register the perforated border design as a trademark and, in 1996, was granted U.S. Registration No. 1,985,086 for that mark for use on printed note cards

2

and greeting cards. For the purposes of the summary judgment motion from which the order now before us arises, the parties have stipulated that the mark is incontestable.[1]

Almost from its inception, ISA was a non-exclusive licensee of the Postal Service. Between 1985 and 1997 there were a series of license agreements between the parties. In each case, the Postal Service licensed use of its "stamp designs" which were further specified to include "[a]ll United States postage stamps to which the U.S. Postal Service owns the copyright." See R1-19, Exh. 1 at 1-2, 19; id., Exh. 2 at 1-2, 19. Stamp images were transmitted to licensees in the

---

[1]Section 1065 of Title 15 of the United States Code provides that

> [e]xcept on a ground for which application to cancel may be filed at any time under paragraphs (3) and (5) of section 1064 of this title, and except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable.

15 U.S.C. § 1065. To claim such status, a mark holder must file an affidavit setting forth compliance of its mark with all requirements of this section. Id. § 1065(3). "Once a mark has achieved 'incontestable' status, its validity cannot be challenged on the grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially." Dieter v. B & H Indus. of Sw. Fla., Inc., 880 F.2d 322, 328 (11th Cir. 1989). More generally, "its validity is presumed, subject to certain enumerated defenses." Id.

form of transparencies, each marked as copyright protected and depicting the entire stamp including any perforated edges. See, e.g., R3-49 at A204 (licensing transparency of Girl Scouts Stamp); see also R3-56, Exh. C at 72. The Postal Service retained right of approval over all licensed products. R1-19, Exh. 1 at 6-8; id., Exh. 2 at 6-8.

As a licensee, ISA also sought to sell its products at Postal Service locations nationwide, and to that end made several presentations to the Postal Service and, later, to its license management firm, Hamilton Projects. In the late 1980s and early 1990s, a few Postal Service stores did carry ISA products. In the mid 1990s, the parties discussed the possibility of expanding such sales to Postal Service stores nationwide. Nothing further came of it, however, and the Postal Service did not respond to any of ISA's subsequent proposals to handle its distribution and management of stationary and greeting cards.

In the late 1990s, the Postal Service Retail Division began offering its own line of stamp art cards. Most of these cards included the perforated border of the original stamp as part of the stamp's image. See, e.g., R1-1, Exhs. 3 (Sylvester and Tweety), 5 (Love), & 6 (Snoopy). The Postal Service has also occasionally licensed or produced cards incorporating the art depicted in its stamps without any perforated border. R3-56, Exh. R (Elvis, Holly, Pansy, two versions of Midnight

4

Angel). Most cards have included the stamp value designation and the "USA" as they appeared on the stamp, but some of the cards that incorporate only the art and not the entire stamp image have not included those elements. Id. (Pansy, two versions of Midnight Angel). The Postal Service's choice about whether to depict stamp images or some other form of the underlying stamp art has often reflected the extent of its ownership interest in the stamp image. See id., Exh. C at 38-39; id., Exh. D at 28-30. In the case of jointly-owned stamp designs, in which the copyright interest in the underlying artwork is held by another, the Postal Service has often been limited to reproducing the entire stamp image with all its constituent elements – the "USA," the price, and any perforations – because it is not licensed to reproduce the underlying art alone. Id., Exh. C at 38-39; id., Exh. D at 27-30.

Since the Postal Service adopted self-adhesive for its stamps, Postal Service cards incorporating the images of stamps have depicted the stamps with their new serpentine die-cut "perforated" borders. R1-1, Exhs. 5-6; R3-56, Exh. P (Love, Snoopy, Puppy, Kwanzaa, Hanukkah). Postal Service cards include an easily visible imprint of its familiar Eagle trademark on the back, generally accompanied by information about the history of the stamp or stamp art depicted on the card and another smaller image of the entire stamp.[2] R3-56, Exhs. P, R. There is no record

_____

[2]The Sylvester and Tweety card is the only exception to this rule. The front of the card depicts the entire image of the original stamp, with its older functional perforated edge. R3-56,

5

evidence that the Postal Service has created any card that adds a perforated border to the image of one of the few stamps it has produced without any perforations.

In September 2002, ISA sued the Postal Service alleging unlawful infringement of its perforated border mark with respect to those Postal Service cards depicting the entire image of a stamp. The Postal Service moved for summary judgment, asserting that (1) it did not use the mark; (2) its use of the perforated border in depicting images of its stamps fell within the fair-use exception provided by law; (3) ISA had abandoned the mark; and (4) damages were precluded based on actual notice. The district court found that the Postal Service had used the disputed border, but that it had used it "other than as a mark, in a descriptive manner, and in good faith," and granted summary judgment in favor of the Postal Service on the basis of fair use.[3] R4-77 at 13. On appeal, ISA disputes the grant of summary judgment arguing only that the district court erred in

_____

Exh. P (Sylvester and Tweety). The back appears to be plain red and mostly blank, but does bear an acknowledgment of Warner Brothers as the source of the characters and of the Postal Service as the source of the stamp design. Id. The card does not carry the Eagle trademark. Id.

Some of the allegedly infringing Postal Service cards also prominently include the trademark of the contracted card designer in addition to that of the Postal Service. See id., Exh. P (Snoopy (Hallmark), Kwanzaa (American Greetings), Hanukkah (American Greetings)).

[3]The court also found that genuine issues of material fact precluded summary judgment as to the Postal Service's alternative arguments asserting abandonment and actual notice. R4-77 at 18, 20.

finding no genuine issue of material fact as to the Postal Service's good faith in using the border.

## II. DISCUSSION

"We review a district court's grant of summary judgment de novo." Siemens Power Transmission & Distribution, Inc. v. Norfolk S. Ry., 420 F.3d 1243, 1248 (11th Cir. 2005). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (quotations and emphasis omitted). If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense. See Martin v. Alamo Community College Dist., 353 F.3d 409, 412 (5th Cir. 2003).

7

A trademark is "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods." Gift of Learning Foundation, Inc. v. TGC, Inc., 329 F.3d 792, 797 (11th Cir. 2003) (per curiam) (quoting 15 U.S.C. § 1127). "A plaintiff seeking to prevail on a trademark infringement claim must show 1) that he had a valid trademark and 2) that the defendant had adopted an identical or similar mark such that consumers were likely to confuse the two." Id.

As for the first element, the parties have stipulated that ISA's mark is incontestable. As to the second, the district court found that the Postal Service stamp art products did incorporate a perforated border similar to ISA's mark. Accordingly, the question became whether or not the Postal Service's use of the border could be defended as a "fair use" of the mark. Because the Postal Service moved for summary judgment on the ground that it could be so defended, it had the burden to establish that there was no genuine issue of material fact as to any element of the fair-use defense. See Martin, 353 F.3d at 413.

A fair-use defense is established if a defendant proves that its use is "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." EMI Catalogue P'ship v. Hill, Holliday, Connors, & Cosmopulos, Inc., 228 F.3d 56, 64

(2d Cir. 2000) (citing 15 U.S.C § 1115(b)(4)); see also Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1185 (5th Cir. 1980). "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for [its] exclusive use and so prevent others from accurately describing a characteristic of their goods." Soweco, 617 F.2d at 1185. In this case, the district court found no genuine issue of material fact as to whether the Postal Service had (1) used the border other than as a mark, (2) used the border descriptively, and (3) done so in good faith. On appeal, ISA challenges only the finding of no genuine issue of material fact as to whether the Postal Service used the border in good faith.

We have not yet established a legal standard for good faith for purposes of a fair-use defense in the context of trademark infringement. In addressing this question, other circuits have concluded that the standard for good faith for fair use is the same as the legal standard for good faith in any other trademark infringement context and that that standard asks whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services. See EMI, 228 F.3d at 66 ("In analyzing the proper scope of fair use good faith, precedents discussing good faith [as part of the standard trademark] likelihood of confusion analysis are relevant because the focus of the inquiry is the same, namely, whether defendant in adopting its mark intended to

9

capitalize on plaintiff's good will."); Inst. for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1009-10 (3d Cir. 1991) (holding that use of infringing phrase after three-year use of agreed alternative raised an issue of material fact as to good faith because it may indicate an "intent[] to trade upon and dilute the good will" of the mark); Packman v. Chicago Tribune Co., 267 F.3d 628, 642 (7th Cir. 2001) ("Mere knowledge of [plaintiff's] trademark on the phrase is insufficient to establish that [defendant publishers] acted in bad faith and to preclude summary judgment. The defendants' good faith 'can be judged only by inquiry into [their] subjective purpose in using the slogan[].'") (citation omitted); Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1423 (9th Cir. 1984) (holding that good faith is put at issue by choice of infringing phrase when other phrases were available because it may indicate "an intent to trade on [mark holder's] good will and product identity"); see also Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 796 (5th Cir. 1983) (concluding that intentionally dissimilar packaging and labeling of product designed to minimize confusion over source sufficiently demonstrated good-faith fair use of term "fish fry" to describe product). No circuit has used any alternative standard, and we agree that this is the appropriate standard to use.

Applying this standard here, we observe that the record indicates that the image both copyrighted and licensed by the Postal Service with respect to each stamp includes a perforated edge when the original stamp was produced with perforated edges. See R3-49 at A204 (licensing transparency of Girl Scouts Stamp denoting copyright assertion over entire stamp image, including perforated edges). The record shows that the overwhelming majority of stamps the Postal Service produces include perforated edges and have long done so. The Postal Service has also provided affirmative evidence of good faith in showing that it prominently places its own familiar Eagle trademark on the backs of its stamp art products thereby identifying them as Postal Service products rather than the products of anyone else in the marketplace. See Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30 (2d Cir. 1997) ("The non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks."). Finally, in response to this evidence, ISA has not identified any evidence that the Postal Service sought to mislead or confuse consumers into thinking that the source of the cards it produced was actually International Stamp Art or anyone other than the Postal Service. In sum, there is no evidence that the Postal Service intended to

11

create confusion as to the source of its stamp art cards by depicting the stamps' edges as part of the image of each stamp.

Although ISA argues that "[t]he inquiry in a fair use analysis need not stop at whether the subsequent user intended to trade on the goodwill of the trademark owner," it fails to articulate exactly what further inquiry, relevant to trademark law, ought to be pursued.[4]  Appellant's Reply Br. at 6.  ISA also argues that it has raised a genuine issue of material fact as to the good faith of the Postal Service even under the majority standard.

In connection with this second point, ISA first asserts that the Postal Service had a non-infringing, commercially viable alternative.  Failure to employ a non-infringing, commercially viable alternative can raise a genuine issue of material fact.  See Gordon & Breach, 931 F.2d at 1009-10;  Sierra On-Line, Inc., 739 F.2d at 1423.  More specifically, ISA suggests that the Postal Service could produce cards depicting the art upon which its stamp designs was based, rather than the stamps themselves, and points out that the Postal Service has already done this on multiple occasions.  This, however, is not an alternative manner of depicting the

---

[4]ISA argues that the burden ought to be on the Postal Service to show that it used the mark in good faith rather than upon ISA to show bad faith.  In the context of moving for summary judgment, the Postal Service must show that there is no genuine issue of material fact as to any element of the fair-use defense, including whether it used the perforated borders in its card designs in good faith.  Accordingly, at this stage, the Postal Service already bears the burden, and we need venture no further into the burden analysis.

stamps, but rather a choice not to depict stamps. Further, although ISA's suggested alternative would be possible with regard to the stamp designs wholly owned by the Postal Service, it might not be possible with regard to those designs of which the copyright to the underlying art is held by another. Accordingly, ISA has not demonstrated that any true alternative exists.

ISA also argues that the Postal Service failed to consult counsel prior to producing cards depicting its stamps. Although this factor may constitute evidence of bad faith under certain circumstances, in this case, because the Postal Service was entitled to use the perforated border descriptively, as part of the image of its products, that it might have done so "without consulting counsel has no tendency to show bad faith." See Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 270 (2d Cir. 1995) ("As [defendant] was fully entitled to use a pine-tree shape descriptively notwithstanding [plaintiff's] use of a tree shape as a mark, the fact that it did so without consulting counsel has no tendency to show bad faith."). Accordingly, we conclude that this evidence, even taken in the light most favorable to ISA, does not weigh in its favor.

ISA further argues that the Postal Service had knowledge of ISA's registration of the mark, and that it had been warned about its infringing cards. Knowledge, under certain circumstances, may raise a genuine issue of material fact

13

as to good faith.  See GTE Corp. v. Williams, 904 F.2d 536, 541 (10th Cir. 1990).

But see Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 483 (2d Cir. 1996)

("Full knowledge of a prior use of a protected mark is not necessarily inconsistent

with a finding of good faith, particularly where the alleged infringer is unsure as to

the scope of the protection.").  Because our "ultimate focus is on whether the

[alleged infringer] had the intent to benefit from the reputation or goodwill of the

[mark holder]," GTE Corp., 904 F.2d at 541, we conclude that, knowledge alone,

in the context of a non-trademark, descriptive use – particularly when there is

affirmative evidence of an intent not to confuse, and no direct evidence to the

contrary – is insufficient to raise a genuine issue of material fact as to good faith.

ISA further complains that the district court failed to consider evidence that

the Postal Service (1) refused to enter a distribution contract with ISA and (2)

"misappropriat[ed]" its concept of selling paper products containing the images of

postage stamps.  Appellant's Br. at 3.  Although this evidence might raise an issue

as to good faith in business relations, trademark law does not protect against

misappropriation of business concepts.  This case is best understood by placing the

emphasis on the uncontested fact that the Postal Service's incorporation of the

perforated border in its greeting cards depicting postage stamps involves a

non-trademark use of ISA's mark.  Where, as here, use of the mark, as the "only

14

[symbol] reasonably available" to indicate that the image on the card is meant to be a postage stamp, "does not attempt to capitalize on consumer confusion or to appropriate the cachet" of the mark holder, it fails to "implicate the source-identification function that is the purpose of trademark." See New Kids on the Block v. News Am. Publ'g Inc., 971 F.2d 302, 308 (9th Cir. 1992). Thus, it cannot constitute infringement.

### III. CONCLUSION

ISA challenges the district court's grant of summary judgment in favor of the Postal Service as to ISA's trademark infringement claim. Because we see no evidence in the record to support the allegation that the Postal Service, in producing cards depicting images of its stamps, intended to benefit from the good will associated with ISA's perforated border trademark, we **AFFIRM** the district court's grant of summary judgment in favor of the Postal Service on the basis of its fair-use defense.