[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10877
_____

D.C. Docket No. 1:16-cv-21203-KMW

HARD CANDY, LLC,
a Florida limited liability company,

Plaintiff - Appellant,

versus

ANASTASIA BEVERLY HILLS, INC.,
a California Corporation,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 23, 2019)

Before MARCUS, GRANT, and HULL, Circuit Judges.

MARCUS, Circuit Judge:

"Trial by jury," James Madison said in a speech urging the adoption of the Bill of Rights, "is as essential to secure the liberty of the people as any one of the pre-existent rights of nature."  James Madison, Speech in Congress Proposing Constitutional Amendments, in Writings 445–46 (Jack Rakove ed., 1999).  But courts have long held that a jury is guaranteed only for claims that would have been heard in courts of law at the time of the Founding, not for those that would have been heard in courts of equity.  This appeal requires us to decide whether the Seventh Amendment right to trial by jury applies when a trademark plaintiff attempts to recover the profits the defendant made by selling the allegedly infringing goods.  Plaintiff Hard Candy, LLC, a cosmetics company, seeks every remedy permitted by the Lanham Act besides actual damages -- that is, it asked for an injunction to prevent future infringement, an accounting and the disgorgement of profits that the defendant made from the allegedly infringing goods, and declaratory relief, along with fees and costs.  Because the claim didn't include actual damages, the district court denied Hard Candy's request for a jury trial. After a bench trial, the court found that there was no likelihood of confusion and held that defendant Anastasia Beverly Hills, Inc., made out a fair use defense to infringement.  Hard Candy challenges each of these determinations on appeal.

As a threshold matter, this case requires us to resolve a Seventh Amendment question of first impression before reaching the merits.  Hard Candy argues that a

2

jury should have decided its claims because it was seeking to recover Anastasia's profits as a "proxy" for the damages it suffered due to infringement. This basis for seeking profits, the company argues, means that the remedy is legal, not equitable in nature and carries with it the right to a jury trial. We disagree. The remedy of an accounting and disgorgement of profits for trademark infringement is equitable in nature and has long been considered that way, so we hold that a plaintiff seeking the defendant's profits in lieu of actual damages is not entitled to a jury trial. As for the district court's merits determinations on infringement and fair use, we find no error and, therefore, affirm.

## I.

Hard Candy, LLC, is a cosmetics company headquartered in Hollywood, Florida. The company's predecessor first filed a trademark application for the HARD CANDY mark in 1995. Since then, Hard Candy has continuously used the HARD CANDY mark in connection with the sale of cosmetics.[1] Hard Candy does not produce cosmetics itself; it licenses the mark to a third-party cosmetics producer, NuWorld Corporation, which makes nail polish, eye shadow, lip gloss, and various facial beauty products that are sold under the Hard Candy name.

---

[1] Hard Candy owns at least fourteen federally registered trademarks. See Registration Nos. 1,987,262; 2,343,732; 2,552,029; 2,666,792; 3,695,602; 2,362,340; 2,567,186; 2,150,397; 2,666,793; 4,218,371; 4,735,879; 4,818,389; 2,059,480; and 4,713,229.

These items are sold exclusively at Wal-Mart stores and on Wal-Mart's website, and have generated sales in excess of $36 million each year since 2011.

Anastasia Beverly Hills, Inc., a California-based corporation, is also in the cosmetics business. In December 2015, Anastasia announced the release of a new edition in its line of "Glow Kits," which are flip-open makeup palettes containing four different shades of facial highlighter. The Gleam Glow Kit included the words "hard candy" in capital letters on the back and inside of the package to designate a peach-pink shade of makeup. Anastasia says that it chose this name because the product had a "shimmer" that reminded the developer of candies that her grandmother gave her when she was young. The developer testified that she was aware of Hard Candy, LLC, as a seller of nail polish in the 1990s, but she was not aware of the company's continued existence when she came up with the name.

The following pictures show the front, back, and inside of the kit offered by Anastasia:

4



HARD CANDY VS. ANASTASIA BEVERLY
HILLS
Case No. 16-CV-21203-KMW
Marked: _____
Admitted: _____
**EXHIBIT:**       D 015





The day after Anastasia announced the release of the Gleam Glow Kit, Hard Candy sent Anastasia a cease and desist letter asserting that it had infringed on its trademark. Anastasia's owner, Anastasia Soare, attempted to call the CEO of Hard Candy but she was unable to make contact; Anastasia's and Hard Candy's attorneys also exchanged emails without resolving the issue before discussions broke off. Anastasia went on to sell the kit -- with the "hard candy" shade -- online and in various retail stores, including Macy's, Ulta, and Sephora. The words "hard candy" appeared in Anastasia's marketing materials and social media posts, as well as on the product itself. In documents provided to retailers, the company described the shade as a "mood-changing golden peach with a pink pearl reflective finish."

6

The Gleam Glow Kit was on the market from December 2015 until August 2016, consistent with Anastasia's initial plan to make it a limited-edition product.

Hard Candy filed a complaint in the United States District Court for the Southern District of Florida against Anastasia, claiming trademark infringement under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; and common law unfair competition. Hard Candy sought an accounting and the disgorgement of Anastasia's profits, statutory damages, a permanent injunction barring Anastasia's use of its mark, declaratory relief, and fees and costs. The complaint included a request for actual damages, but, notably, Hard Candy dropped this application before trial. The district court then struck Hard Candy's jury trial demand because all of the remaining remedies were equitable in nature.

To prevail on each of its claims, Hard Candy had to establish that Anastasia's use of the words "hard candy" created a likelihood of confusion. See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1026 & n.14 (11th Cir. 1989) (noting that the elements of trademark infringement under common law and the Lanham Act "are the same," and that "an unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim"). Applying our seven-factor likelihood of confusion test, the district court

determined that Hard Candy had not met its burden.  The court also concluded that

even if Hard Candy could establish infringement, Anastasia had made out a fair

use defense because it used the term "hard candy" in good faith as a description of

the product, not as a mark.

This appeal followed.

II.

Hard Candy first argues that the district court erred in its denial of a jury

trial.  We review the grant of a motion to strike a jury demand de novo.  FN

Herstal SA v. Clyde Armory Inc., 838 F.3d 1071, 1080 (11th Cir. 2016).

We have yet to address the question whether a plaintiff seeking the

disgorgement of the defendant's profits and an accounting under the Lanham Act

has the right to have its claims decided by a jury.[2]  A plaintiff is entitled to a jury

trial in an action that is "analogous" to a claim that would have been brought in the

English law courts at common law, but not if the claims sounded in equity or

admiralty.  See Tull v. United States, 481 U.S. 412, 417 (1987).  Hard Candy says

that at least "where a plaintiff seeks to recover a defendant's profits as a 'proxy'

for actual damages, the claim is a legal one that entitles the plaintiff to a jury

---

[2] This Court was recently presented with the same question in FN Herstal SA v. Clyde Armory Inc., 838 F.3d 1071 (11th Cir. 2016), but the panel affirmed the district court's denial of a motion to reinstate a demand for disgorgement of profits and so it was not required to reach the issue.  Id. at 1090 & n.10 ("[W]e need not reach the issue of whether recovery of profits under § 1117(a) of the Lanham Act is an equitable remedy for which there is no right to a jury trial.").

trial."[3]  Br. for Plaintiff-Appellants at 23.  However, we agree with the district court's conclusion that the requested remedy is equitable in nature and thus does not confer a right to trial by jury.

## A.

The Lanham Act provides that "[w]hen a violation of any right of the registrant of a mark . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  In "exceptional cases," a prevailing party can be awarded attorneys' fees.  Id.  A different section of the Act vests courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of [15 U.S.C. § 1125]."  Id. § 1116(a).

---

[3] Anastasia replies that Hard Candy waived this argument, since its primary argument in district court was that a plaintiff seeking profits is entitled to a jury trial in all circumstances, regardless of the theory, rationale, or remedy.  But Hard Candy has not changed its position that it was entitled to a jury trial because its requested relief is legal in nature, and its argument was fairly presented to the district court.  "Although new claims or issues may not be raised" on appeal, "new arguments relating to preserved claims may be reviewed."  Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1304 n.3 (11th Cir. 2008) (citing Yee v. City of Escondido, 503 U.S. 519, 534 (1992)).

The Act, therefore, provides a broad menu of remedies to a plaintiff claiming infringement.  In "ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day."  SunAmerica Corp. v. Sun Life Assurance Co. of Can., 77 F.3d 1325, 1336 (11th Cir. 1996). This is because "the public deserves not to be led astray by the use of inevitably confusing marks," and injunctive relief is the surest way to prevent future harm. Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1209 (11th Cir. 2008); 5 McCarthy on Trademarks and Unfair Competition § 30:1 (5th ed. 2018) [hereinafter "McCarthy"] (describing injunctive relief as the "usual and normal remedy" and the "usual historical practice" after a court has found infringement). Indeed, injunctive relief is the quintessential form of equitable remedy; it does not entitle a plaintiff to a jury trial.

The monetary damages available to a Lanham Act trademark plaintiff can be divided into five rough categories:  recovery of the defendant's profits, actual business damages and out-of-pocket losses (like corrective advertising), lost profits, punitive damages, and attorneys' fees.  See id. § 30:57.  "Actual damages" in this context covers everything from damages from lost sales or licensing fees due to the infringer's sale of offending goods to intangible harm like reputational damage and loss of good will.  As we have said, a trademark plaintiff "may recover for all elements of injury to the business of the trademark owner proximately

10

resulting from the infringer's wrongful acts." Bos. Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 597 F.2d 71, 75 (5th Cir. 1979) (quotations omitted) (permitting recovery of damages in the amount that the infringer would have had to pay the plaintiff for nonexclusive license to use the marks).[4] The primary limiting principle is that the damages may not be "speculative." See, e.g., Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564 (11th Cir. 1986) ("The partners stress that a trademark infringement award must be based on proof of actual damages and that some evidence of harm arising from the violation must exist. . . . We must decide whether the district court's assessment of the actual damages or harm suffered by Ramada Inns was speculative.").

The disgorgement of profits and the closely related remedy of an accounting are much different. "The remedy of damages seeks to compensate the victim for its loss, whereas the remedy of an accounting . . . [seeks] disgorgement of ill-gotten profits." SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prods., LLC, 137 S. Ct. 954, 964 (2017). The Lanham Act permits recovery of profits because actual damages are often difficult to prove. It "shifts the burden of proving economic injury off the innocent party, and places the hardship of disproving economic gain onto the infringer." George Basch Co. v. Blue Coral, Inc., 968 F.2d

---

[4] Decisions of the former Fifth Circuit issued before October 1, 1981 were adopted as binding precedent in the Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

1532, 1539 (2d Cir. 1992); Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487–88 (11th Cir. 1987).  The statute does so by expressly providing that "the plaintiff shall be required to prove defendant's sales only," while the "defendant must prove all elements of cost or deduction claimed" against its profits.  15 U.S.C. § 1117(a).  So, when a plaintiff seeks an accounting and disgorgement of profits as a remedy for trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress.

In its complaint, Hard Candy sought just about every form of relief available:  declaratory relief; an injunction barring Anastasia from "[a]dvertising, promoting, selling, offering for sale, or distributing any services or products that use any words or symbols that so resemble the Hard Candy Marks," among other activities; an order "that Defendant hold in trust, as constructive trustee for the benefit of Hard Candy, LLC, its profits obtained from the infringement"; an "accounting of all amounts due and owing to Hard Candy, LLC as a result of Defendant's infringing activities"; money damages, including actual and statutory damages; punitive damages; and attorneys' fees and costs.  Hard Candy dropped its claim for actual damages before trial, but it did not withdraw all of its claims for monetary relief, nor did it withdraw its demand for a jury trial.  But just because Hard Candy seeks a monetary recovery does not mean that it is entitled to a jury

12

trial; in fact, the Supreme Court has rejected the notion that "any award of monetary relief must necessarily be 'legal' relief." Curtis v. Loether, 415 U.S. 189, 196 (1974).

## B.

To determine whether a plaintiff is entitled to a jury trial, we look to the Seventh Amendment:  "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  U.S. Const. amend. VII.; see also Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution -- or as provided by a federal statute -- is preserved to the parties inviolate.").  Because the Seventh Amendment requires that the right to a jury trial only be "preserved" as it then existed, the inquiry requires us to look to the right as it existed at the time of the Founding.  At common law, jury trials were limited to cases heard in courts of law, as opposed to those in courts of equity or admiralty.  See Tull, 481 U.S. at 417. The Seventh Amendment right has thus long been understood to extend only to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 447 (1830) (Story, J.).

The Supreme Court has set out a two-part test to determine whether the Seventh Amendment's guarantee applies to a particular claim:

> To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought. First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

Tull, 481 U.S. at 417–18 (citations omitted). The dispute in this case in the main centers on the second part -- the nature of the profits remedy sought by Hard Candy.

We begin, then, by examining the nature of the action, here trademark infringement and unfair competition based on infringement. "Trademarks and their precursors have ancient origins, and trademarks were protected at common law and in equity at the time of the founding of our country." Matal v. Tam, 137 S. Ct. 1744, 1751 (2017). Trademark infringement claims began as common law actions for fraud or "deceit." Sandforth's Case, heard in an English court of law in 1584, may be the earliest trademark infringement action at common law. See Keith M. Stolte, How Early Did Anglo-American Trademark Law Begin? An Answer to Schechter's Conundrum, 8 Fordham Intell. Prop. Media & Ent. L.J. 505, 509 (1998); 1 McCarthy § 5:2. The plaintiff there was a maker of woolen cloth who claimed that a competitor used his mark and placed it on his own goods,

14

which were comparatively "ill, insufficient and unmerchantable."  Stolte, supra, at 530.  The court held that he could bring a claim at common law sounding in the tort of deceit.  Id. at 538.

By the time the Seventh Amendment was ratified in 1791, the common law trademark infringement action was well established.  See, e.g., Singleton v. Bolton (1783) 99 Eng. Rep. 661, 661; 3 Dougl. 293, 293 (stating that "if the defendant had sold a medicine of his own under the plaintiffs name or mark, that would be a fraud for which an action would lie").  Trademark actions also were brought in courts of equity during the same period.  Blanchard v. Hill (1742) 26 Eng. Rep. 692; 2 Atk. 484, is the earliest reported trademark case brought in equity.  See Mark P. McKenna, The Normative Foundations of Trademark Law, 82 Notre Dame L. Rev. 1839, 1852 (2007).  Shortly thereafter, the accepted rule was "that equity could be invoked to protect the plaintiff's title to his marks."  See id. at 1854.  Early American case law likewise demonstrates that trademark rights could be enforced at equity.  See, e.g., Taylor v. Carpenter, 23 F. Cas. 742, 744 (Story, Circuit Justice, C.C.D. Mass. 1844) (No. 13,784).  Thus, because when the Seventh Amendment was ratified trademark rights had "been long recognized by the common law and the chancery courts of England," Trade-Mark Cases, 100 U.S. 82, 92 (1879), this part of the Supreme Court's test is indeterminate.

15

The second prong -- the nature of the remedy -- is the "[m]ore important" consideration and provides substantially more guidance here. Curtis, 415 U.S. at 196. Hard Candy does not seek actual damages, and it is undisputed that a plaintiff seeking only injunctive relief, costs, and fees would not be entitled to a jury trial. Thus, our analysis centers on Hard Candy's request for an accounting of Anastasia's profits and for the accompanying disgorgement of those gains. Our review is necessarily broader than the origins of the statutory remedy contained in the Lanham Act. As the Second Circuit recently explained, "the ancient remedies of accounting, constructive trust, and restitution have compelled wrongdoers to 'disgorge' -- i.e., account for and surrender -- their ill-gotten gains for centuries." S.E.C. v. Cavanagh, 445 F.3d 105, 119 (2d Cir. 2006). To determine the nature of the Lanham Act profits remedy at issue here, we look to the foundation of these remedies more generally.

The remedy sought by Hard Candy, an accounting and disgorgement of profits, was historically a matter for courts of equity. Justice Story explained that although "[o]ne of the most ancient forms of action at the common law [was] the action of account," the "Courts of Equity began to assume jurisdiction in matters of account . . . at a very early period." 2 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 581 (14th ed. 1918). Before the courts of equity assumed jurisdiction in such cases, they could only

16

issue an injunction to prevent ongoing or future harm and, therefore, could not offer full relief.  A plaintiff would have to enter a court of law to receive compensation for past injuries.  Not surprisingly, the accounting remedy was soon carried over to courts of equity as a means of "permitting an award of monetary and injunctive relief in the same action," and thereby preventing duplicative litigation.  Restatement (Third) of Unfair Competition § 37 cmt. b (Am. Law Inst. 1995); see also George Basch Co., 968 F.2d at 1537–38.  In fact, courts of equity quickly became the preferred forum for accounting, and the action at law, though older, fell "into almost total disuse."  Story, supra, § 581.

This story unfolded the same way in the case of trademark infringement.  The Restatement (First) of Torts explained that disgorgement of profits "is a form of equitable relief" that "was granted initially in [trademark and unfair competition] cases as an equivalent or substitute for legal damages when equity jurisdiction was properly invoked for injunctive relief."  Restatement (First) of Torts § 747 cmt. b (Am. Law. Inst. 1938).  The English Court of Chancery made this exact point far earlier in an 1803 trademark case, observing that when infringement is proven, "a Court of Equity in these cases is not content with an action for damages . . . and therefore the remedy here, though not compensating the pecuniary damage except by an account of the profits, is the best:  the remedy by an injunction and account."  Hogg v. Kirby (1803) 32 Eng. Rep. 336, 339; 8

17

Ves. Jun. 214, 223; see also Millington v. Fox (1838) 40 Eng. Rep. 956, 961; 3

My. & Cr. 388, 352 (noting that trademark plaintiffs "undoubtedly had a right to

the assistance of a Court of Equity to enforce" their rights in a mark and deeming

an accounting to be an appropriate ancillary to injunctive relief).  In other words, a

court of law, limited to providing legal relief, would not be able to provide full

redress to a trademark infringement plaintiff, but a court of equity could do so by

providing an injunction along with ordering an accounting and disgorgement of the

defendant's profits -- precisely the remedy Hard Candy seeks here.

The distinction between legal damages and the equitable accounting also is

reflected in early American trademark case law.  Shortly after the 1870 passage of

the first federal trademark legislation, the Supreme Court explained that in

trademark cases, "damages may be recovered in an action at law," but "the

continued violation of [trademark rights would] be enjoined by a court of equity,

with compensation for past infringement."  Trade-Mark Cases, 100 U.S. at 92.

"[C]ompensation for past infringement" must refer to the disgorgement of the

defendant's profits, because courts of equity could not provide legal damages.  By

the end of the nineteenth century, "a clear division" between the remedies available

at law and equity had arisen in trademark cases:  "Common law courts awarded

damages; equity issued injunctions and awarded defendant's profits to provide

complete relief in a single proceeding."  Mark A. Thurmon, Ending the Seventh

Amendment Confusion: A Critical Analysis of the Right to a Jury Trial in

Trademark Cases, 11 Tex. Intell. Prop. L.J. 1, 67 (2002).

The theoretical justification offered for providing an accounting and

disgorgement in trademark cases further reveals that Hard Candy's requested

remedy is equitable in nature. Long ago, the Supreme Court explained that the

remedy is based on the legal fiction of the trust ex maleficio, a constructive trust in

which a holder of property is recognized to have obtained that property by

wrongful means. The Court put it this way:

> The right to use a trade-mark is recognized as a kind of property, of which the owner is entitled to the exclusive enjoyment to the extent that it has been actually used. The infringer is required in equity to account for and yield up his gains to the true owner, upon a principle analogous to that which charges a trustee with the profits acquired by wrongful use of the property of the cestui que trust. . . . [T]he jurisdiction must be rested upon some other equitable ground, -- in ordinary cases, as in the present, the right to an injunction -- but the court of equity, having acquired jurisdiction upon such a ground, retains it for the purpose of administering complete relief, rather than send the injured party to a court of law for his damages. And profits are then allowed as an equitable measure of compensation, on the theory of a trust ex maleficio.

Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 259 (1916)

(citations omitted and emphasis added). The Court's theory was that a trademark

infringer wrongfully benefits by using property owned by the trademark owner --

namely, the mark -- and so "a defendant who is liable in a trademark or trade dress

infringement action may be deemed to hold its profits in constructive trust for the

injured plaintiff." George Basch Co., 968 F.2d at 1537–38. This theoretical foundation sounds in equity: the remedy of an equitable accounting was originally provided for disputes with a "trust or fiduciary relation existing between the parties." Story, supra, § 598. When the profits remedy is properly understood as "an equitable measure of the compensation" justified by "the analogy of the liability of a trustee who wrongfully appropriated trust property," its foundation in the reasoning of equity is clear. Restatement (First) of Torts § 747 cmt. b. In short, the historical record establishes that the remedy requested by Hard Candy is equitable, not legal, in nature.

## C.

In the face of this history, Hard Candy submits that the Supreme Court's decision in Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), overcomes the traditional characterization of the disgorgement of profits remedy as equitable, and, somehow, converts it into a legal remedy. In Dairy Queen, a restaurant company sued a franchisee for breach of contract and trademark infringement and sought "an accounting to determine the exact amount of money owing by [the franchisee] and a judgment for that amount" along with injunctive relief. Id. at 475. The Court held that a jury trial was required because "insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal." Id. at 476. Hard Candy claims that the Supreme Court's bottom-line answer in Dairy Queen --

"we think it plain that their claim for a money judgment is a claim wholly legal in its nature," id. at 477 -- supports its demand for a jury trial.  We remain unpersuaded.

Importantly, the Court seemed skeptical of the plaintiff's characterization of its requested relief as an "accounting" of profits:

> The respondents' contention that this money claim is "purely equitable" is based primarily upon the fact that their complaint is cast in terms of an "accounting," rather than in terms of an action for "debt" or "damages."  But the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.

Id. at 477–78.  An action for "debt" or "damages" would certainly provide a legal remedy, and this is the better understanding of the basis for the Court's conclusion that a jury trial was required.  Elsewhere, the Court said that "[t]he most natural construction of the respondents' claim for a money judgment would seem to be that it is a claim that they are entitled to recover whatever was owed them under the contract as of the date of its purported termination plus damages for infringement of their trademark since that date."  Id. at 476 (emphasis added).  Plainly, an action for contract damages and a claim for damages for infringement are legal in nature.  Tellingly, the Supreme Court later described Dairy Queen as an "action for damages for trademark infringement 'subject to cognizance by a court of law.'"  Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 346 (1998) (quoting Dairy Queen, 369 U.S. at 477).

21

We do not read <u>Dairy Queen</u> as holding that the accounting and disgorgement of profits was a legal remedy, since that isn't what the plaintiff had sought.  <u>See</u> <u>Dairy Queen</u>, 369 U.S. at 479 ("A jury, under proper instructions from the court, could readily determine the recovery, if any, to be had here, whether the theory finally settled upon is that of breach of contract, that of trademark infringement, or any combination of the two.").  Indeed, it would have been strange for the Court to have implicitly held, without any historical analysis, that it deemed accounting and disgorgement of profits to be a legal remedy requiring a jury trial.  We presume that the Supreme Court does not hide elephants in such well-disguised mouseholes.  <u>Cf.</u> <u>Whitman v. Am. Trucking Ass'ns</u>, 531 U.S. 457, 468 (2001).  And we cannot ignore the clear lessons of history, most notably the Supreme Court's designation of profits as an "equitable measure of compensation" provided "on the theory of a trust <u>ex maleficio</u>," when our task is to explain the "nature of the remedy" sought by the plaintiff.  <u>Hamilton-Brown Shoe Co.</u>, 240 U.S. at 259; <u>see also</u> <u>Gucci Am., Inc. v. Weixing Li</u>, 768 F.3d 122, 132–33 (2d Cir. 2014) ("<u>Dairy Queen</u> does not abrogate the longstanding treatment of an accounting of <u>profits</u> as an equitable remedy, nor could it change how the remedy was treated at the time of the Court of Chancery.").

The two Courts of Appeals that have addressed this precise question -- the Sixth and Ninth Circuits -- have agreed with our conclusion that a claim for an

22

accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, that the Seventh Amendment's guarantee of a jury trial does not apply. Ferrari S.p.A. v. Roberts, 944 F.2d 1235, 1248 (6th Cir. 1991) ("Ferrari's complaint requested only equitable relief; an injunction and disgorgement of profits."); Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1074–76 (9th Cir. 2015). And outside of the Seventh Amendment context, we have already held that Lanham Act disgorgement is an equitable remedy. See Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995) ("Here, [the plaintiff] seeks a permanent injunction and the equitable remedy of receiving appellants' profits from counterfeiting under 15 U.S.C. § 1117."). In Levi Strauss, the district court had entered a preliminary injunction against an alleged infringer and froze the infringer's assets. Id. at 984. A panel of this Court held that the asset freeze was a valid exercise of the district court's equitable powers because the underlying claim involved a request for equitable relief -- namely, the disgorgement of profits under the Lanham Act. Id. at 987.

We would also be remiss if we overlooked the Court's repeated statements, albeit in dicta, that the disgorgement of wrongful gains is equitable. As we've said, "there is dicta and then there is dicta, and then there is Supreme Court dicta." Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir. 2006). Thus, for example, in

Tull, the Supreme Court said in passing that "an action for disgorgement of improper profits [is] traditionally considered an equitable remedy." Tull, 481 U.S. at 424. Later, the Supreme Court observed that damages are equitable "where they are restitutionary, such as in action[s] for disgorgement of improper profits." Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570 (1990) (quotation marks omitted); see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 n.2 (2002) (describing "an accounting for profits" as "a form of equitable restitution"). Our sister circuits too have offered similar observations. E.g., Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 36 (1st Cir. 2002) (noting "the Lanham Act's designation of an accounting of defendant's profits as an equitable remedy"); A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 209 (3d Cir. 1999) (en banc) ("[A]n accounting for profits is a form of equitable relief . . . ." (quoting Williamson-Dickie Mfg. Co. v. Davis Mfg. Co., 251 F.2d 924, 927 (3d Cir. 1958)); Fuller Prods. Co. v. Fuller Brush Co., 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting for profits . . . is an equitable remedy subject to the principles of equity.").

All of this leads us to the conclusion that an accounting and disgorgement of a defendant's profits in a trademark infringement case is equitable in nature and does not carry with it a right to a jury trial. So, returning to Hard Candy's claim and the Seventh Amendment test laid out by the Supreme Court, the first prong --

24

the nature of the cause of action -- is a wash since trademark actions were cognizable at both law and equity; but the more important second prong -- the nature of the remedy -- weighs decidedly in favor of Anastasia.  Because Hard Candy abandoned any claim for legal relief, the district court did not err in determining that the plaintiff was not entitled to a jury trial.

Lest there be any doubt, the record is clear that Hard Candy expressly disclaimed its request for actual damages prior to trial.  In a joint filing, Hard Candy "stipulate[d] that it is not seeking actual damages or lost profits" and instead was "seek[ing] to recover Defendant Anastasia's profits from its sales."  On the basis of that stipulation, Anastasia withdrew its motion for partial summary judgment on actual damages.  And, again, during the trial Hard Candy repeatedly objected when Anastasia sought to elicit testimony about actual damages.  Thus, for instance, when Anastasia asked Jerome Falic, Hard Candy's CEO, to confirm that the company was "not seeking to recover any of its own los[t] profits in this case," Hard Candy's counsel objected because they "stipulated to that fact" and it was "irrelevant."  When Anastasia asked its expert about his statement that he had not "seen any evidence of financial or economic harm to the plaintiff," Hard Candy objected and said, "Harm to the plaintiff is not an element of this case."  And when Anastasia asked the president of NuWorld -- the corporation that manufactures cosmetics for Hard Candy -- whether he had any "evidence that NuWorld was

harmed by Anastasia's use of the words 'hard candy' in the Gleam Glow Kit," Hard Candy again objected on grounds of relevance.

To allow Hard Candy on the one hand to object to the introduction of any evidence related to its actual injuries and on the other to insist on a jury trial because it is seeking redress for that same harm would be incongruous, even if it hadn't expressly dropped its claim for actual damages. What's more, Hard Candy's proposed rule would make the Seventh Amendment right fully depend on the rationale the plaintiff offered for seeking to recover the defendant's profits. That rule is inconsistent with the longstanding interpretation of the Seventh Amendment set out by the Supreme Court, which requires us to look to the nature of the action and the nature of the requested remedy. Hard Candy was not entitled to a jury trial on its claim for an accounting and disgorgement of the defendant's profits.

### III.

Hard Candy also challenges the district court's resolution of its claims on the merits. "After a bench trial, we review the district court's conclusions of law de novo and the district court's factual findings for clear error." Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1230 (11th Cir. 2009). Findings as to whether a plaintiff has ultimately shown a likelihood of confusion, as to each of the factors, and as to the elements of the fair use defense are subject only to clear error review.

26

N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1220 (11th Cir. 2008) (likelihood of confusion);  Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 952 (7th Cir. 1992) (fair use).

A.

We begin with the likelihood of confusion.  The district court applied our seven-factor test and concluded that Hard Candy had not shown a likelihood of confusion.  On review, "[t]he real question is whether the court's ultimate determination about the 'likelihood of confusion' was correct."  Univ. of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1543 (11th Cir. 1985); see also Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc., 675 F.2d 1160, 1164 n.3 (11th Cir. 1982) ("Our review . . . is governed by the clearly erroneous test even though the court's analysis of the factors relevant to a finding of likelihood of confusion was incomplete."), abrogated on other grounds by Tobinick v. Novella, 884 F.3d 1110, 1118 (11th Cir. 2018).  Accordingly, "we may affirm an ultimate finding on the issue of confusion that is not clearly erroneous, even when the district court fails to consider all seven factors" of the test or errs in its analysis of any one.  See Wesco Mfg., Inc., 833 F.2d at 1489.

Our precedent sets out a seven-factor test to determine whether a purportedly infringing product creates a likelihood of consumer confusion.  We look to the:

> (1) type of mark, (2) similarity of mark, (3) similarity of the products
> the marks represent, (4) similarity of the parties' retail outlets and

27

customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion.

Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 122 F.3d 1379, 1382 (11th Cir. 1997).  On summary judgment, the court determined that three of them -- similarity of products, similarity of trade channels and customers, and similarity of advertising -- favored Hard Candy.  There was no dispute that both companies sell cosmetics products online and in retail stores, their customers are primarily women between the ages of 18 and 35, and both advertise their products through trade shows, social media, and traditional print media.  The court rejected Anastasia's proposed distinction between the "high-end" and "low-end" segments of the cosmetics market.

The district court then held a three-day bench trial.  Afterwards, the court determined that the mark was "arbitrary" since it bears no relationship to the products, which meant that the mark was "strong" and that the type-of-mark factor weighed in Hard Candy's favor; that the similarity-of-mark factor favored Anastasia, because it was not using "hard candy" as a mark; that Anastasia did not intentionally infringe on the mark; and that there was no evidence of actual confusion.  Viewing the evidence as a whole, the trial court determined that Hard Candy had not established a likelihood of confusion and issued a decision to that effect from the bench.  The record indicates that there was ample factual evidence

28

to support the trial court's findings and, indeed, that the court weighed each of the factors with great care.

Hard Candy responds with three legal arguments; none of them are persuasive. For starters, Hard Candy asserts that the district court erred by finding that the "similarity of mark" factor favored Anastasia. The district court concluded that "Anastasia's use of 'Hard Candy' does not create a likelihood of confusion on this factor [because] while Anastasia uses the same words, all in capital letters, the Court must consider the overall impression created by the use of the mark as a whole, rather than comparing the individual features, and . . . the use creates a different overall impression." Hard Candy, in essence, claims that the trial court should have stopped at the point that it recognized that Anastasia's use of the term "hard candy" was formally identical to the company's mark -- HARD CANDY, in capital letters -- and concluded that the factor weighed in its favor.

But the trial court must "compare[] the marks and consider[] the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1337 (11th Cir. 1999) (emphasis added); John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 975 (11th Cir. 1983) ("This consideration includes a comparison of the appearance, sound and meaning of the marks, as well as the manner in which the marks are used."). The district court looked to the overall

29

impression created by the Gleam Glow Kit -- the words "HARD CANDY" appeared only on the back and inside of the kit, "nam[ing] one shade of a product that is otherwise clearly and prominently featured as an Anastasia Beverly Hills mark." In this way, the district court concluded that Anastasia was using the words merely "to describe a shade," and for that reason it found that this factor favored Anastasia.

The district court's analysis is fully consistent with our precedent. In John H. Harland Co., we considered as part of this analysis things like the placement of the mark, the mark's usage to label a specific part of the product, and the size of the print. 711 F.2d at 975–76. Hard Candy has provided no case law holding that the similarity-of-mark factor bars consideration of whether the alleged infringer was using the words as a mark. The point of the similarity-of-mark analysis "is that the closer the marks are, the more likely reasonable consumers will mistake the source of the product that each mark represents." Frehling Enters., Inc., 192 F.3d at 1337. For that reason, "[t]he probability of this potential confusion is the touchstone." Id. Thus, although Anastasia used words that are identical to Hard Candy's mark, it was reasonable for the district court to determine that Anastasia was not using the words in a "manner" likely to cause confusion as to the source of the goods.

Second, Hard Candy claims that the district court erred by giving "substantial and overwhelming weight to Anastasia's lack of intent to infringe." Br. for Plaintiff-Appellants at 49.  Hard Candy argues that we should follow courts outside this Circuit that have said that "[i]ntent . . . is an issue whose resolution may benefit only the cause of a [plaintiff], not of an alleged infringer."  Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 287 (6th Cir. 1997); see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 19 (1st Cir. 2004).  The problem with the argument is that the factual predicate is not reflected in the record.  The district court never said that it was giving any affirmative (let alone overwhelming) weight to its finding that Anastasia lacked intent to infringe.  The court concluded its discussion this way:  "And for all of these reasons, and the cases I've cited, I find that Anastasia did not intend to infringe on the mark and was not intentionally blind after receiving the cease and desist."  It did not say that this factor weighed in Anastasia's favor.  Hard Candy seems to assume that the district court gave it too much weight merely because the issue took up more space in the ruling, but there is no indication in the record that Anastasia's intent received undue consideration.

Finally, Hard Candy argues that the district court placed too much weight on the lack of a showing of actual confusion.  We have said that evidence of actual confusion "is not necessary to a finding of likelihood of confusion."  John H.

Harland Co., 711 F.2d at 978.  Hard Candy says that the district court erred by giving the lack of actual confusion evidence "substantial weight," since this evidence is often difficult to produce and the product was on the market for only eight months.

Our cases have often recognized actual confusion as one of the most important factors.  Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1264 (11th Cir. 2016) ("the best evidence of a likelihood of confusion"); Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 936 (11th Cir. 2010) ("the most weighty consideration"); Lone Star Steakhouse & Saloon, Inc., 122 F.3d at 1382 (one of "the two most important factors"); John H. Harland Co., 711 F.2d at 978 ("the best evidence of likelihood of confusion").  "The presence or absence of actual confusion can be highly effective in showing a high, or a low, likelihood of confusion if there has been ample opportunity for consumer confusion."  Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 228 (2d Cir. 1999) (emphasis omitted), abrogated on other grounds by Moseley v. V Secret Catalogue, Inc., 537 U.S. 418 (2003).  "If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion."  Id.

32

In this case, there was enough opportunity for confusion to make the absence of any evidence significant.  Uncontroverted testimony at trial established that Anastasia sold 248,075 Gleam Glow Kits, totaling over $5 million in revenue.  The product was posted on Anastasia's corporate social media accounts, which have millions of followers.  And still, Hard Candy did not produce any evidence that a customer was ever actually confused about the source of the Gleam Glow Kit.  A reasonable person could conclude that the lack of evidence is at least probative of the conclusion that there was no likelihood of confusion -- hundreds of thousands of cosmetics consumers purchased the allegedly infringing kit, several times more likely saw it on store shelves or online, and still there is no evidence that anyone, anywhere, was ever confused about whether Anastasia or Hard Candy was responsible for the product.  Hard Candy hasn't established clear error here either.

In sum, the record does not suggest that the district court committed clear error as to any of its findings, and it does not show clear error as to the court's ultimate conclusion that Hard Candy had not shown a likelihood of confusion. Even if we were to accept one or two of Hard Candy's arguments -- and on this record, we don't -- that would not compel reversal.  "[A] district court's error in its analysis of one of the subsidiary factors in the likelihood of confusion test is not enough to allow us to overturn the district court's decision."  Fla. Int'l Univ. Bd. of Trs., 830 F.3d at 1255 (internal quotation marks omitted).  Our review of the

33

record, taken as a whole, does not leave us "with the definite and firm conviction that a mistake has been committed" about the district court's basic finding that there was no likelihood of confusion.  See United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

B.

Hard Candy also challenges the district court's conclusion that Anastasia made out a fair use defense to infringement.  A defendant is entitled to the fair use defense if it establishes that it used the allegedly infringing term "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  Int'l Stamp Art, Inc. v. U.S. Postal Serv., 456 F.3d 1270, 1274 (11th Cir. 2006) (internal quotation marks omitted).  Hard Candy challenges the district court's finding as to the second element, arguing that the district court erred "by completely disregarding the central requirement that whether a trademark is being used in a 'descriptive sense' starts and ends with consumer perception."  Br. for Plaintiff-Appellants at 41.

"The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for [its] exclusive use and so prevent others from accurately describing a characteristic of their goods."  Int'l Stamp Art, Inc., 456 F.3d at 1274 (quoting Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1185 (5th Cir. 1980)).  This Court has not elaborated on what it means to use a mark "in a descriptive sense."  We have, however, explained that a descriptive mark

34

"identifies a characteristic or quality of an article or service as, for example, its color, odor, function, dimensions, or ingredients." Soweco, Inc., 617 F.2d at 1183 (citation and quotations omitted). The Seventh Circuit has interpreted the fair use element of use "in a descriptive sense" in a roughly similar way, explaining that "it is not necessary that a descriptive term depict the [product] itself, but only that the term refer to a characteristic of the [product]." Sands, Taylor & Wood Co., 978 F.2d at 952.

To the extent that Hard Candy argues that the district court erred by not considering how a hypothetical consumer would perceive the use of the mark, we think it has ignored what the district court said in its ruling. The court looked to "the overall context; the lettering, the type, the style, the size, [and] the visual placement" of the words on the product. It accepted the argument that "hard candy" was used in a descriptive sense because "it was used to describe the sheen" of the makeup shade that the term labeled. Anastasia introduced evidence that cosmetics companies regularly describe shades with words that are not literal color descriptions, like the other three shades in the kit named "Starburst," "Mimosa," and "Crushed Pearl." The district court was attempting to discern how a reasonable consumer of cosmetics would perceive Anastasia's use of the mark, not relying purely on Anastasia's subjective intent, contrary to Hard Candy's assertion. And to the extent Hard Candy argues that the district court should have required

35

Anastasia to introduce evidence of <u>actual</u> consumer perception, that proposition has no support in the law.  <u>See, e.g.</u>, <u>Sorensen v. WD-40 Co.</u>, 792 F.3d 712, 725 (7th Cir. 2015) (upholding fair use defense without any such evidence); <u>Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.</u>, 125 F.3d 28, 30 (2d Cir. 1997) (same).  We are hard-pressed to find clear error of any kind.

### IV.

The long and the short of it is that Hard Candy has failed to convince us that the district court erred in its resolution of this case.  The historical evidence reveals that the particular remedy sought by Hard Candy -- an accounting and disgorgement of Anastasia's profits as an alleged infringer -- is a creature of equity.  For that reason the Seventh Amendment's guarantee of a jury trial does not apply.  On the merits, we can discern no error in the district court's resolution of Hard Candy's claims, and, accordingly, affirm.

**AFFIRMED.**