# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1493
_____

National Presto Industries, Inc.

*Plaintiff - Appellant*

v.

U.S. Merchants Financial Group, Inc., doing business as Greenmade

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 13, 2024
Filed: November 12, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

This is an appeal from the final judgment in a complex intellectual property dispute. With many issues resolved, the primary issues are (i) whether National Presto Industries, Inc. ("Presto"), was entitled to a jury trial of its Lanham Act claim that U.S. Merchants Financial Group, Inc. ("U.S. Merchants"), infringed Presto's unregistered trade dress in its "HeatDish" personal electric heater and (ii) whether the

district court[1] erred, after a six-day bench trial, in finding Presto failed to prove that its trade dress had acquired secondary meaning, an essential element of a trade dress infringement claim. Concluding the district court did not err in denying a jury trial and in granting judgment on Presto's trade dress claim, we affirm.

## I. Background

Presto is a Wisconsin corporation that manufactures and sells household appliances. In 1989, Presto designed and began selling under the brand name "HeatDish" a personal electric heater with a "high-tech look," which at that time meant a heater with a parabolic design that looked like a satellite dish. The first HeatDish model was sold at several retail stores, including Price Club, which later merged with Costco. Early sales were poor, and Price Club, prior to its merger with Costco, told Presto "the product was out." In response, Presto developed a merchandising plan for the "HeatDish" using point-of-sale displays placed at the front of the store or at "end caps" that begin an aisle of merchandise. The displays placed an operational heater on top of a block of HeatDish packages, pointed downward so that passing shoppers could feel the heat.

Presto's merchandising program improved HeatDish sales at Price Club, which soon merged with Costco. Thereafter, for each heater sales season for nearly thirty years, Costco issued Presto a single-season commitment letter outlining terms of sale for the HeatDish and permitting Presto to employ its merchandising program in designated Costco stores.

HeatDish sales declined during the 2016-2017 season. Costco asked Presto to make changes to reduce distribution costs, including importing the HeatDish directly

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

from overseas and not sending Presto monitors to maintain the point-of-sale displays.[2] Mary Jo Cohen, Presto's CEO, declined to make these changes and rejected Costco's proposed changes to the terms of the 2017-2018 commitment letter. Costco informed Presto in the spring of 2017 that it would not be purchasing the HeatDish for certain Arizona warehouse locations for the 2017-2018 season, and that Costco may test a different brand of heater in those locations. In the spring of 2018, Costco informed Presto it would not be purchasing the HeatDish for the Arizona warehouse locations for the 2018-2019 season. Costco continued to purchase the HeatDish for other markets but excluded Arizona from the 2018-2019 commitment letter.

U.S. Merchants, a competing vendor of household appliances, has supplied products to Costco for over forty years. In 2017, searching for a new supplier, Costco contacted U.S. Merchants, stating it wanted a parabolic electric heater that was UL approved,[3] had high heat, and looked industrial and robust. After receiving this request, U.S. Merchants sought advice from counsel to avoid infringing third party intellectual property rights. Counsel learned that Presto had obtained three design patents covering HeatDish models in 1990, 1998, and 2002, but each patent had expired. Counsel evaluated photos of a prototype and concluded that no U.S. design patent would be infringed. Counsel noted that the market for parabolic heaters was crowded and all patented parabolic heater designs included "a parabolic radiator with a protective screen." U.S. Merchants also sought advice regarding possible trademark infringement. Counsel learned that Presto never sought to register the trade dress of any HeatDish model. It asserted trademark protection over unregistered

---

[2]Costco generally does not enter into commitment letters with suppliers, rarely agrees to reserve space at "end caps" or at the front of the store, and, even more rarely, reserves space without charging the supplier. Presto previously had never paid for its product placement in Costco stores.

[3]"UL" refers to Underwriter Laboratories, a well-known organization that develops and publishes safety standards for consumer products, tests products according to these standards, and certifies products that pass with a "UL" symbol.

designs of other products but had never placed a "TM" on any HeatDish design. Jeff Green, a founder and co-owner of U.S. Merchants, testified that U.S. Merchants understood counsel's advice to be that U.S. Merchants would not infringe any third party intellectual property rights in designing the heater requested by Costco.

After presenting Costco a variety of design options, an overseas manufacturer designed a parabolic electric heater; U.S. Merchants sent Costco a physical prototype in June 2017, which it named "The Heat Machine." Costco was unimpressed, identifying improvements that it wanted. Many changes focused on a comparison with Presto's HeatDish. U.S. Merchants requested its manufacturer to "make a grill[e] the same design as Presto to see if Costco would like that design better." U.S. Merchants eventually presented a revised second prototype to Costco in early to mid-2018. Costco approved this version, with revisions, and the first Heat Machine model -- the model at issue in this lawsuit -- was sold at Costco during the 2018-2019 season. U.S. Merchants placed its "Greenmade" trademark on The Heat Machine.

Prior to purchasing The Heat Machine, Costco's legal department determined the product did not infringe third party intellectual property rights. During the 2018-2019 season, Costco continued to carry Presto's HeatDish at some locations. Costco generated more revenue from selling The Heat Machine during the 2018-2019 season than from Presto's HeatDish during the previous year. Because of this lawsuit, Costco decided not to purchase The Heat Machine after the 2018-2019 season. U.S. Merchants changed The Heat Machine design for the 2019-2020 season. The updated model has been sold at Home Depot and Costco since the 2019-2020 season.

## II. Procedural History

On December 4, 2018, Presto filed this action against U.S. Merchants, asserting eleven causes of action: claims for trade dress infringement, trademark infringement, false designation of origin, and unfair competition under § 43(a) of the Lanham Act,

15 U.S.C. § 1125(a); for copyright infringement under 17 U.S.C. § 501(a); for tortious interference with prospective business relations; for unfair competition under Minnesota common law; for deceptive trade practices under the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44; and for Unfair Trade Practices under Minn. Stat. § 325D.13. Presto's Complaint sought damages for its state law claims. The Complaint requested a jury trial for "all claims or causes of action . . . to the fullest extent possible under the United States Constitution." For the federal trademark and trade dress claims, the Complaint requested injunctive relief and

> [t]hat Defendant be required, pursuant to 15 U.S.C. § 1117, to account to National Presto for any and all profits derived by them, either individually or jointly to be ordered to disgorge, and be ordered to pay all damages sustained by National Presto by reasons of Defendant's actions complained herein, including an award of treble damages.

U.S. Merchants answered the complaint and asserted four counterclaims that it later dismissed with prejudice.

On January 28, 2021, U.S. Merchants moved for summary judgment on all claims. Presto filed a cross-motion for summary judgment on its copyright infringement claim. After briefing and argument, the district court dismissed five Counts. It denied U.S. Merchants's motion to dismiss the federal claims in three other Counts. The court denied the motion to dismiss Presto's state law unfair competition claims premised on surviving claims but dismissed unfair competition claims based on other dismissed claims. It denied Presto's motion for summary judgment on its copyright claim. The claims remaining after this order were one Count of trade dress infringement, one Count of copyright infringement, the tortious interference claim, and four statutory claims derivative of the other remaining claims. The district court requested briefing on whether Presto was entitled to a jury trial on its surviving claims.

Presto's brief sought a jury trial on all surviving claims. U.S. Merchants's brief conceded that Presto had a right to a jury trial on its copyright infringement claim but contended that Presto had no right to a jury trial on its other claims. The district court agreed with U.S. Merchants that Presto sought only equitable relief and therefore had no right to a jury trial on the non-copyright claims:

> Under the Lanham Act, most courts find that a claim for disgorgement of an infringer's profits is an equitable claim, for which the Seventh Amendment does not guarantee a right to trial by jury. . . . The Court finds this authority persuasive. Accordingly, under the second prong of the [Supreme Court's governing Seventh Amendment] test, Plaintiff's claim for trade dress infringement is an equitable claim for which no right to a jury trial exists.
>
> Presto attempts to circumvent this case law by arguing that disgorgement is considered a legal claim when the infringer's profits serve as a "proxy" for the plaintiff's damages. But Presto's claim for disgorgement does not actually serve as a proxy for its damages. To be sure, some evidence suggests that Presto would have been Costco's exclusive supplier of parabolic heaters in Arizona during the 2018-2019 heater season, and thus the sales that U.S. Merchants achieved are roughly indicative of the sales Presto would have achieved. However, the *profits* U.S. Merchants attained are unrelated to the profits Presto would have earned. It is undisputed that the products are sold at different price-points, and that they have different margins. If Presto were seeking compensation, rather than restitution and unjust enrichment, it could have argued that it suffered actual damages in the form of lost profits -- supported by expert testimony analyzing U.S. Merchants' sales data to quantify Presto's lost sales. Presto has not attempted to present such evidence, however. Consequently, its disgorgement claim seeks equitable relief.

Order at 5-7, Nat'l Presto Indus., Inc. v. U.S. Merchants Fin. Grp., Inc., No. 18-cv-03321, 2022 WL 1237927 (D. Minn. Nov. 2, 2021) (hereafter cited as "Nat'l Presto Order") (citations omitted).

Because facts giving rise to Presto's copyright claim differed from facts giving rise to the trade dress and derivative state law claims, the district court ruled it would try the copyright claim to a jury and hold a bench trial on the other claims.[4] In April 2022, the court held a six-day bench trial on Presto's trade dress infringement and state law claims. On August 18, 2022, the district court issued its 92-page Findings of Fact and Conclusions of Law, concluding that Presto failed to prove trade dress infringement; tortious interference with contract; and its state law claims for unfair competition, unlawful trade practices, and deceptive trade practices.

One month later, Presto filed a motion to certify the November 2021 Order denying a jury trial for interlocutory appeal under 28 U.S.C. § 1292(b). Not surprisingly, U.S. Merchants opposed certification as untimely and as raising a question the court did not reach. The district court denied § 1292(b) certification. "[Presto] has had numerous opportunities to present notice of, and evidence supporting, a viable legal proxy theory of damages -- including during fact discovery, expert discovery, dispositive motion practice, and the bench trial held on [its] Lanham Acct claims -- but . . . Presto failed to do so." Presto now appeals, arguing the district court erred in denying its right to a Seventh Amendment jury trial and in concluding that it failed to prove trade dress infringement.

### III. The Seventh Amendment Issue

Presto argues the district court erred in denying its request for a jury trial on its trade dress infringement claim. We review this issue *de novo*. Entergy Arkansas, Inc. v. Nebraska, 358 F.3d 528, 540 (8th Cir. 2004).

---

[4]Presto's copyright claim was submitted to a jury after a four-day trial in February 2023. The jury returned a verdict for Presto, awarding $150,000 damages. U.S. Merchants filed a notice of appeal but later abandoned its cross-appeal of the district court judgment on the copyright claim.

A right to jury trial of a civil suit exists when it is prescribed by statute or under the Seventh Amendment.[5]  See Fed. R. Civ. P. 38(a).  Both parties acknowledge the Lanham Act provides no statutory right to a jury trial of the claim in question, so Presto must establish a right under the Seventh Amendment.  By providing a right in "Suits at common law," the Supreme Court held nearly two centuries ago, the framers of the Seventh Amendment meant "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 447 (1830).  The Seventh Amendment right applies to statutory as well as common law causes of action.  "To determine whether a statutory action is more analogous to cases tried in courts of law than to suits tried in courts of equity or admiralty, we examine both the nature of the statutory action and the remedy sought."  Feltner v. Columbia Pictures Television, Inc. 523 U.S. 340, 348 (1998); see Tull v. United States, 481 U.S. 412, 417-18 (1987).  "The second stage of this analysis is more important than the first."  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989).

Presto admits that the first stage of this analysis is inconclusive because, during the eighteenth century, both courts of law and courts of equity heard trademark infringement actions.  See Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1355 (11th Cir. 2019) (summarizing historical caselaw).  Accordingly, like the district court, we focus on the second, more important factor:  whether the remedy Presto sought was legal or equitable in nature.  See Sec. & Exch. Comm'n v. Jarkesy, 144 S. Ct. 2117, 2128-29 (2024).  Historically, while an action for money damages was the traditional form of relief offered in the courts of law, courts of equity had authority to provide a monetary remedy "incidental to or intertwined with

---

[5]The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.

injunctive relief," such as in "actions for disgorgement of improper profits." Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry, 494 U.S. 558, 570-71 (1990) (quotations omitted); see Tull, 481 U.S. at 424.  After the Federal Rules of Civil Procedure unified law and equity, determining whether a claim for monetary relief would have sounded in equity 200 years ago in England became more complex and controversial.

The remedy sought in Presto's Complaint was that U.S. Merchants "be required, pursuant to 15 U.S.C. § 1117, to account to National Presto for any and all profits derived by them, either individually or jointly to be ordered to disgorge, and be ordered to pay all damages sustained by National Presto by reason of Defendant's actions complained herein."  Section 1117(a) provides that the successful plaintiff in an infringement action is "entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."   Presto acknowledges that disgorgement of an infringer's profits is typically considered an equitable remedy but argues that in this case, because Costco's sales of the U.S. Merchants Heat Machine would have been sales of Presto's HeatDish but for the trade dress infringement, the claim for disgorgement is a "proxy" for a claim of Presto's damages for lost sales and therefore a quintessential legal remedy.  See generally Black & Decker Corp. v. Positec USA Inc., 118 F. Supp. 3d 1056 (N.D. Ill. 2015).

We have not addressed this "proxy" theory.  We have held, more generally, that "money damages may constitute equitable relief where the court is not awarding damages to which the plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment."  InCompass IT, Inc. v. XO Commc'ns Servs., Inc., 719 F.3d 891, 898 (8th Cir. 2013) (quotations omitted).

In Hard Candy, a Lanham Act trademark infringement plaintiff sought an injunction to prevent future infringement and an accounting and disgorgement of defendant's profits in selling the infringing goods. 921 F.3d at 1348. When the plaintiff dropped its request for actual damages before trial, the district court struck its jury trial demand. After the district court ruled against plaintiff on the merits, plaintiff appealed, arguing "where a plaintiff seeks to recover a defendant's profits as a 'proxy' for actual damages, the claim is a legal one that entitles the plaintiff to a jury trial." Id. at 1352. This was an issue of first impression in the Eleventh Circuit.

The Eleventh Circuit panel in Hard Candy upheld the district court's denial of a jury trial. The court noted the Supreme Court's "repeated statements, albeit in dicta, that the disgorgement of wrongful gains is equitable." Id. at 1357, 1359, citing Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 259 (1916) (in a trademark infringement suit, "[t]he infringer is required in equity to account for and yield up his gains to the true owner . . . . [P]rofits are then allowed as an equitable measure of compensation . . . ."); Tull, 481 U.S. at 424; Terry, 494 U.S. at 570 (damages are an equitable remedy when restitutionary, "as in action for disgorgement of improper profits"); Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 n.2 (2002) (accounting for profits is "a form of equitable restitution"). The court further noted that the two courts of appeals "that have addressed this precise question . . . have agreed with our conclusion that a claim for an accounting and disgorgement of profits under the Lanham Act is equitable in nature and, therefore, that the Seventh Amendment's guarantee of a jury trial does not apply." Hard Candy, 921 F.3d at 1358, citing Ferrari S.p.A. v. Roberts, 944 F.2d 1235, 1248 (6th Cir. 1991), and Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1074-76 (9th Cir. 2015).

In denying Presto's request for a jury trial, the district court found these authorities "persuasive," citing 6 McCarthy on Trademarks and Unfair Competition § 32:124 (5th ed.). Nat'l Presto Order at 6 ("[A]lmost all courts have held that there is no right to trial by jury if the only monetary remedy the trademark owner seeks is an accounting of the alleged infringer's profits."). But the district court did not reject Presto's "proxy for plaintiff's damages" theory categorically, as Presto asserted in its belated application for a § 1292(b) interlocutory appeal on this issue and continues to assert on this appeal from the final judgment. Rather, the district court held that the proxy theory requires factual support and, on the summary judgment record -- and later on the bench trial record -- "Presto's claim for disgorgement does not actually serve as a proxy for its damages." The Complaint did not plead a "proxy for damages" theory; Presto did not present evidence of actual damages; and the evidence presented did not support Presto's "proxy" allegation because, while "sales that U.S. Merchants achieved are roughly indicative of the sales Presto would have achieved. . . . the *profits* U.S. Merchants attained are unrelated to the profits Presto would have earned." Nat'l Presto Order at 6. Presto makes no attempt on appeal to marshal evidence that contradicts these findings that underlie the district court's ruling.

Presto asserts that, despite the fact that U.S. Merchants's profits would not be the same as Presto's profits, Presto's desired remedy was legal rather than equitable because its aim was compensation rather than disgorgement of unjust enrichment. Of course, monetary relief often serves multiple goals, often to both compensate the plaintiff and prevent unjust enrichment of the defendant. In a trademark infringement suit, "profits are . . . allowed as an equitable measure of compensation." Hamilton-Brown Shoe Co., 240 U.S. at 259. That Presto (or its attorneys) *intended* the recovery of U.S. Merchants profits to be compensation -- which we think goes without saying -- does not transform an otherwise equitable remedy into a legal one.

-11-

Presto further asserts that U.S. Merchants's profits were a rough but adequate measure of Presto's damages because they were direct competitors and The Heat Machine was a direct substitute for the HeatDish. We agree with the district court that this is an inadequate substitute for evidence that would establish a proxy-for-damages claim -- if Presto were seeking compensation, rather than restitution and unjust enrichment, it could have argued that it suffered actual damages in the form of lost profits -- supported by expert testimony analyzing U.S. Merchants's sales to quantify Presto's lost sales. Presto did not attempt to present such evidence. Because it failed to account for the differing profit margins, it did not show that disgorgement of U.S. Merchants's profits was an approximation of *Presto's* damages.

Presto relies on the Supreme Court's decision in Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962), a case involving a claim for breach of a trademark licensing agreement. The Court in that case held that plaintiff's request for "an accounting to determine the exact amount of money owing" was "a claim wholly legal in its nature." Id. at 476-77. Dairy Queen stands for the proposition that the substance of the remedy sought, not the label it is given, governs the Seventh Amendment inquiry. Courts have rejected Presto's more expansive interpretation of Dairy Queen -- that any monetary remedy sought in a trademark infringement action is necessarily legal. See Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 132-33 (2d Cir. 2014).

We acknowledge that proving actual damages caused by trade dress infringement can be difficult. The Lanham Act permits a plaintiff to recover the infringing defendant's profits without having to prove causation. 15 U.S.C. § 1117(a). This does not make the remedy legal under the established Seventh Amendment analysis. Courts have long exercised equitable jurisdiction in "[t]he absence of a plain and adequate remedy at law." Watson v. Sutherland, 72 U.S. 74, 79 (1866). We decline to construe an equitable remedy as legal *because* the legal remedy may have been unavailable, when the inadequacy of legal remedies is the *raison d'être* of equitable jurisdiction. We agree with the district court that Presto

-12-

failed to prove that the disgorgement of U.S. Merchants's profits that *Presto sought* was a legal rather an equitable remedy. Accordingly, the court properly denied Presto's Seventh Amendment request for trial by jury of its Lanham Act trade dress infringement claim.

## IV. The Trade Dress Claim

In Lanham Act litigation, "[t]rade dress is the total image of a product, the overall impression created, not the individual features." Gateway, Inc. v. Companion Prods., Inc., 384 F.3d 503, 507 (8th Cir. 2004) (quotation omitted). "Trade dress does not protect one from a competitor's imitation of one's marketing concept." Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 871 (8th Cir. 1994). Trade dress will be protected from infringement if it is inherently distinctive and nonfunctional. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 773 (1992).[6] However, the Supreme Court observed in Wal-Mart Stores, Inc. v. Samara Bros., Inc., "[c]onsumers are aware of the reality that, almost invariably, even the most unusual of product designs -- such as a cocktail shaker shaped like a penguin -- is intended not to identify the source, but to render the product itself more useful or more appealing." 529 U.S. 205, 213 (2000). Therefore, the Court concluded, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." Id. at 216. That holding governs this case. "Trade dress protection," the Court subsequently noted, "must subsist with the recognition that in many instances there is no prohibition against copying goods and products." TrafFix Devices, Inc. v.

---

[6]In 1999, Congress amended § 43(a) of the Lanham Act by adding subsection (a)(3): "In a civil action for trade dress infringement under this chapter for trade dress not registered on the principle register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3), as added by Pub. L. 109-312, § 2(1), 120 Stat. 1730.

Mktg. Displays, Inc., 532 U.S. 23, 29 (2001). A manufacturer's method and style of doing business is not protected.

"Secondary meaning occurs when 'in the minds of the public the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" Gateway, 384 F.3d at 508, quoting Wal-Mart, 529 U.S. at 211. After lengthy review of the relevant trial evidence, the district court concluded "that Presto has failed to prove by a preponderance of the evidence that the HeatDish has acquired secondary meaning." In other words, as the Supreme Court phrased the issue in Wal-Mart, this is not the rare case where the HeatDish product design was intended to identify the source of the product, rather than "to render the product itself more useful or more appealing." 529 U.S. at 1341. We review the court's finding that Presto failed to make an adequate showing of secondary meaning for clear error. Gateway, 384 F.3d at 507. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," it is not clearly erroneous, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

After careful review of the extensive trial record, we have no difficulty concluding there is no clear error. Secondary meaning is a fact-intensive inquiry. "[T]he chief inquiry is whether in the consumer's mind the mark has become associated with a particular source." Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc., 780 F.2d 1324, 1332-33 (8th Cir. 1985). "Consumer surveys and testimony of consumers, therefore, may be the only direct evidence of secondary meaning and should be considered in determining whether a mark has acquired such meaning." Aromatique, 28 F.3d at 871. Presto did not present any direct consumer evidence supporting its claim and cites no product design case in which secondary meaning was established without such evidence.

Secondary meaning can also be shown through circumstantial evidence. Frosty Treats, Inc. v. Sony Comput. Ent. Am., Inc., 426 F.3d 1001, 1005 (8th Cir. 2005). Presto asserts the district court ignored evidence that the HeatDish is "distinctive and recognized." We disagree. The court addressed this issue at great length, finding that many Presto competitors "have adopted substantially similar components for their heaters," and that Presto has changed many features of its design since it first introduced the HeatDish in 1989.

The record readily supports these findings. Since the first model in 1989, Presto has introduced at least ten different models of the HeatDish, each with minor design changes obviously intended to make the product either more functional or attractive -- allowing the parabolic reflector to move up and down; changing the color and shape of the base; placing and later removing a lamp at the center of the base; keeping the reflector and curved grille the same but changing the base to be more angular; putting a new nameplate at the center of the grille; and adding a third concentric ring on the grille. Presto emphasizes that it has kept the parabolic heater designed to look like a satellite dish and unique Bundt-shaped grille. But trade dress is "the total image of a product, the overall impression created, not the individual features." Gateway, 384 F.3d at 507 (quotation omitted). Presto takes issue with the district court's conclusion that this evidence rebuts an inference that Presto's trade dress is "distinctive and recognized." But the issue is whether the HeatDish trade dress -- the overall product design -- was intended to identify the source of the product, rather than to make the product more useful or appealing. Presto simply contests the manner in which the district court weighed the design evidence, which does not establish clear error.

Presto argues its product advertising and point-of-sale display promotion, which can be relevant circumstantial evidence of secondary meaning, support its claim. See Aromatique, 28 F.3d at 871. But the district court correctly noted that "advertising must cause the public to equate the mark with the source of the product"

to establish secondary meaning. Co-Rect Prods., 780 F.2d at 1332. Presto's HeatDish advertising stressed HeatDish's "strong steel grille" that "guards the ceramic-insulated heating element." Its store point-of-sale displays featured an operating HeatDish sending air downward so passing consumers could feel the heat. This advertising promoted the product's functions and appearance, not its source.

Presto argues that emails in which Costco's representative requested that U.S. Merchants design a "Presto look-alike-Gril[e]" demonstrate that the HeatDish was distinctive and recognized. The district court found that, while they may support an inference of copying, these emails do not support an inference of secondary meaning. We agree. "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." Traffix Devices, 532 U.S. at 29. Here, U.S. Merchants clearly labeled its product with its own trademark. See Aromatique, 28 F.3d at 871 (determining that the alleged trade dress infringer's conspicuous placement of its trademark rebutted an inference of secondary meaning).

Presto argues U.S. Merchants's alleged copying caused actual confusion, pointing to sixteen instances in which units of The Heat Machine were wrongly returned to Presto. The district court found this evidence inconclusive: "Presto has not presented any evidence as to *why* it received the sixteen product returns, meaning the Court has no way to determine whether there was actual confusion." Presto also presented evidence that four Costco receipts listed a HeatDish product with Costco's Heat Machine item number. A representative of Costco testified this was a mistake attributable to Costco, not its customers. Without more context, such as testimony by the purchasing consumers, mistakes of Costco's employees are at best weak evidence of secondary meaning.

For these reasons, we agree with the district court that Presto failed to establish secondary meaning. As this failure of proof is fatal to Presto's trade dress infringement claim, we need not consider Presto's arguments that the district court erred in concluding that the basic components of the HeatDish -- including the base, the reflector, the housing, and the grille -- "are functional," see Pocket Plus, LLC v. Pike Brands, LLC, 53 F.4th 425, 433 (8th Cir. 2022), and that U.S. Merchants's imitation of Presto's HeatDish trade dress is not "likely cause confusion" among an appreciable number of consumers. 15 U.S.C. § 1125(a)(1)(A); see Gateway, 384 F.3d at 509.

The judgment of the district court is affirmed.

_____